# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Derrick Devon Turner,<br><br>    Plaintiff,<br><br>v.<br><br>Otis Elevator Company, TK Elevator, and International Union of Elevator Constructors, Local 9,<br><br>    Defendants. | Case No. 21-cv-00203 (SRN/ECW)<br><br><br>**Order** |

Alicia L. Anderson, The Law Office of Alicia L. Anderson, 5108 West 74th Street, Suite 398092, Edina, MN 55439, for Plaintiff.

Jill C. Taylor and Kyle A. Petersen, Seyfarth Shaw, LLP, 233 South Wacker Drive, Suite 8000, Chicago, IL 60606; and Chelsea J. Bodin and Joseph G. Schmitt, Nilan Johnson Lewis PA, 250 Marquette Avenue South, Suite 800, Minneapolis, MN 55401, for Defendant Otis Elevator Company;

Frank L. Kollman, Kollman & Saucier, P.A., 1823 York Road, Timonium, MD 21093; and Louise A. Behrendt, Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for Defendant TK Elevator; and

Brendan D. Cummins and Alex M. Bollman, Cummins & Cummins, LLP, 920 Second Avenue South, Suite 1245, Minneapolis, MN 55402, for Defendant International Union of Elevator Constructors, Local 9.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 43] filed by Defendant International Union of Elevator Constructors, Local 9 (the "Union") and the Partial Motion to Dismiss and Motion to Stay [Doc. No. 54] filed by Defendant Otis Elevator Company ("Otis Elevator"). Based on a review of the files, submissions, and

proceedings herein, and for the reasons below, the Court grants in part and denies in part both motions.

## I.   BACKGROUND

### A.   The Parties

Plaintiff Derrick Devon Turner is a black male who resides in Saint Cloud, Minnesota, and brings this lawsuit alleging racial discrimination, harassment, and retaliatory discharge. (Am. Compl. Parties[1] ¶ 1, ¶¶ 77–149.)

Defendant Union is located in St. Paul, Minnesota. (*Id.* Parties ¶ 4.) To join the Union, an applicant must complete an apprentice program. (*Id.* ¶ 6.) To complete the apprentice program, an applicant must pass a number of tests, like "identifying hand tools, mathematics, safety, etc." and work 500 hours as an apprentice.[2] (*Id.* ¶¶ 6, 10.) To complete the 500 hours, an applicant is hired by an employer and works as an apprentice to a member of the Union. (*See id.* ¶ 10.)

Defendant Otis Elevator, a New Jersey company, and Defendant TK Elevator ("TKE"), a foreign corporation, are the companies where Plaintiff was placed during the apprentice program. (*Id.* Parties ¶¶ 2–3, ¶¶ 11–12, 18–27.)

---

[1]   Plaintiff has repeated paragraphs 1–7 in his Amended Complaint. Accordingly, if the Court is citing paragraphs under the "Parties" or "Jurisdiction and Venue" sections of the Amended Complaint, it will indicate so. Otherwise, the citations refer to the paragraphs beginning on page 2 of the Amended Complaint under the "Statement of Facts."

[2]   The Union disputes the number of hours that must be completed. (Def.'s Mem. [Doc. No. 45] ("Union Mem.") at 24.) However, on a motion to dismiss, the Court accepts the facts alleged in the Amended Complaint as true. *See Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

### B.      Factual Background

Plaintiff joined the apprentice program in January 2019.  (*Id.* ¶ 1.)  When he joined, he held eleven certifications.  (*Id.* ¶ 8.)  He passed the identification and skills tests "with flying colors."  (*Id.* ¶ 7.)

#### 1.      Plaintiff's First Job Placement (Otis Elevator)

On January 22, 2019, the Union informed Plaintiff of a placement opportunity with Otis Elevator located in Fargo, North Dakota, which he pursued.  (*Id.* ¶¶ 11–12.)  He contacted the hiring manager, who requested that he visit the office to complete paperwork. (*Id.* ¶¶ 12–13.)  Upon arriving at the office, Plaintiff "was met with cold stares and comments of 'he's black.' "  (*Id.* ¶ 14.)  The hiring manager called him two days later, informing him that "he was no longer hired" and that they were "going in a different direction."  (*Id.* ¶ 15.)  Plaintiff "reported this incident to Dan Gilbert at the Union."  (*Id.* ¶ 17.)

#### 2.      Plaintiff's Second Job Placement (TKE)

Less than one month later, on February 19, the Union informed Plaintiff of another opportunity, this time with TKE.  (*Id.* ¶ 18.)  TKE hired Plaintiff as a pre-apprentice to a "journeyman."[3]  (*Id.* ¶ 19.)  The journeyworker continually called Plaintiff names "such as

---

[3]      "Journeyman" is the title used in the Amended Complaint.  (*See generally* Am. Compl.)  Traditionally, this term is used in the labor context to designate someone as a master of a trade.  *See, e.g.*, *Guthart v. White*, 18 F. App'x 609, 610 (9th Cir. 2001) (citing Nevada's statutory definition); *Richards v. United Auto Workers, Loc. 977*, No. 79-174-C, 1981 WL 2247, at *1 (S.D. Ind. Sept. 14, 1981) (citing union's collective bargaining agreement).  However, Minnesota uses the term "Journeyworker."  Minn. Stat. 178.011, subd. 9 (" 'Journeyworker' means a person who has attained a level of skill, abilities, and competencies recognized within an industry as having mastered the skills and

'nigger.' "   (*Id.*)   Plaintiff reported this behavior to TKE management, but no one responded.  (*Id.* ¶ 20.)  He also reported the behavior to the Union.  (*Id.* ¶ 21.)

On February 26, the journeyworker told Plaintiff to " 'get the f*** off the jobsite.' " (*Id.* ¶ 22.)  Plaintiff left the jobsite and called the TKE manager, who did not answer.  (*Id.* ¶¶ 23–24.)  Immediately after calling, the manager fired Plaintiff by text message.  (*Id.* ¶ 24.)  In response, Plaintiff attempted to contact other TKE management, but "no one responded to him."  (*Id.* ¶ 25.)

### 3.    Plaintiff's Third Job Placement (Otis Elevator)

Then, in March 2019, the Union informed Plaintiff that it had another opportunity with Otis Elevator.  (*Id.* ¶¶ 26–27.)  Plaintiff initially rejected the offer because Otis Elevator had "previously refused to hire him because of his race."  (*Id.* ¶ 28.)  He even "attempted to file a grievance with the Union." (*Id.* ¶ 30.)  But the Union informed Plaintiff that he would be "kicked out of the union" if "he did not go to work for Otis," and told him that he had no rights as a pre-apprentice.  (*Id.*)  Although Plaintiff further "expressed how uncomfortable, afraid, and unsafe he felt working for Otis again," the Union explained that "if he did not get his five hundred hours, he would be kicked out of the program."  (*Id.* ¶ 31.)  Faced with this pressure, Plaintiff accepted the position and attended orientation at Otis Elevator's Roseville location on March 7, 2019.  (*Id.* ¶ 32.)

---

competencies required for the trade or occupation.' ").  Accordingly, the Court uses the term journeyworker henceforth.

### a.  Orientation

An incident allegedly occurred during the orientation.  One of the new hires "directed a comment to [Plaintiff]," stating that "he liked to 'make nooses' and use them." (*Id.* ¶ 33.)  This was said "in front of the entire orientation group." (*Id.*)  Although Plaintiff reported this incident to the manager, no disciplinary action was taken against that individual.  (*Id.* ¶¶ 34–35.)  Plaintiff does not allege that he reported this incident to the Union.

### b.  The First Journeyworker

After orientation, Plaintiff was assigned to work with a journeyworker in downtown Minneapolis (the "first journeyworker").  (*Id.* ¶ 36.)  The first journeyworker called Plaintiff names including " 'retarded, stupid, dumb, slow, and weak,' amongst other things." (*Id.* ¶ 37.)  Plaintiff reported this behavior to his manager at Otis Elevator and also to the Union, but neither "took any remedial action." (*Id.* ¶ 38–39.)

In addition to calling him names, the first journeyworker asked Plaintiff "to perform tasks that were not compliant with OSHA safety standards." (*Id.* ¶ 40.)  Plaintiff informed the journeyworker that such tasks were unsafe.  (*Id.* ¶ 41.)  In response, the journeyworker "heaped yet more abuse on him and refused to train him." (*Id.*)  Despite again complaining to Otis Elevator and the Union, "nothing was done." (*Id.* ¶ 42.)

The abuse allegedly got worse.  One day, Plaintiff broke "down in tears" in response to the journeyworker's abuse.  (*Id.* ¶ 43.)  Then, on May 27, 2019, the journeyworker "threatened to physically assault" Plaintiff unless he quit.  (*Id.* ¶ 44.)  Plaintiff told "him that he would not quit." (*Id.* ¶ 45.)  Then, Dan Gilbert and Dave Griefenhagen from the

Union arrived.   (*Id.* ¶ 47.)   After informing them about "the journey[worker]'s mistreatment, unsafe work practices, and constant verbal abuse," Plaintiff was told "essentially, that he had to 'take it or quit.' "  (*Id.* ¶¶ 48–49.)

### c.    The Second Journeyworker

After that incident, Plaintiff began working with a different journeyworker (the "second journeyworker").  (*Id.* ¶ 50.)  The second journeyworker had just finished the apprentice program and Plaintiff was her first pre-apprentice.  (*Id.* ¶ 51.)  The second journeyworker used broken equipment, "which almost caused accidents on two different occasions."  (*Id.* ¶ 52.)  Plaintiff informed the Otis Elevator manager about the broken equipment and requested replacements on June 5, 2019.  (*Id.* ¶ 53–54.)  The manager never responded.  (*Id.* ¶ 55.)

Two days later, although Plaintiff's white colleagues were "set up with direct deposit for their paychecks," Plaintiff had to go to the office to pick up his paycheck.  (*Id.* ¶¶ 56–57.)  While he was there, the Otis Elevator manager terminated his employment, stating that "he didn't think that [Plaintiff] knew the safety rules."  (*Id.* ¶ 59–60.)  In response, Plaintiff correctly answered a random safety question and then requested a copy of the safety report that he had previously filed.  (*Id.* ¶ 60–61.)  The manager denied that request.  (*Id.* ¶ 61.)

### 4.    Termination from the Apprentice Program

Shortly thereafter, Plaintiff met with "people from the Elevator Union to discuss whether he could stay a member of the union," and the "only person who spoke at this meeting" was the Otis Elevator manager who fired him.  (*Id.* ¶¶ 62–63.)  A few days later,

despite never receiving any disciplinary warnings or notices nor conducting a performance

ability test, Plaintiff's participation in the apprentice program was terminated.  (*Id.* ¶¶ 65,

70–71.)  Plaintiff appealed that decision.  (*Id.* ¶ 66.)

### C.    Procedural History

#### 1.    The Equal Employment Opportunity Commission

On March 1, 2019, Plaintiff filed charges against TKE and Otis Elevator with the

Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶¶ 72–73.)  Plaintiff filed

race-discrimination charges, along with an additional retaliation charge against Otis

Elevator.  (*Id.*)  About ten months later, on January 2, 2020, Plaintiff also filed race-based

discrimination and retaliation charges against the Union to the EEOC.  (*Id.* ¶ 74.)  As to all

three Defendants, Plaintiff received a Notice of Right to Sue from the EEOC, resulting in

the filing of this action.  (*Id.* ¶ 75.)

#### 2.    The Lawsuits

In December 2020, Plaintiff filed two lawsuits, one in state court and one in federal

court.  (Notice of Removal [Doc. Nos. 1] at 1–2, Exs. A, B.)  He filed the first suit on

December 16 in federal court in Minnesota.  (*Id.* at 1, Ex. A.)  And he filed the second

lawsuit on December 29 in Minnesota state court.  (*Id.* at 2, Ex. B.)  In response, the

Defendants removed the Minnesota state-court lawsuit to federal court in Minnesota.  (*See

generally id.*)

After removal, Plaintiff asked the Court to consolidate the two federal cases.  (Pl.'s

Rule 26(f) Rep. [Doc. No. 31] at 12.)  The Court ordered that the cases be consolidated.

(Order Consolidating Cases [Doc. No. 35].)   Plaintiff subsequently filed an Amended Complaint, which is the operative complaint in this case.

### 3.   The Amended Complaint

The Amended Complaint alleges six causes of action.   (Am. Compl. ¶¶ 77–149.) Plaintiff alleges that the Defendants engaged in race-based discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, and the Minnesota Human Rights Act ("MHRA").   (*Id.* ¶¶ 77– 125.)   In addition, Plaintiff alleges that the Union and Otis Elevator violated the federal Occupational Safety and Health Act ("OSHA") by terminating Plaintiff "for reporting safety violations on the work premises."[4]   (*Id.* ¶¶ 126–31.)   Likewise, Plaintiff alleges that the Union and Otis Elevator violated Minnesota's Occupational and Safety Health Act ("Minnesota OSHA") by expecting him to work under unsafe conditions and terminating him for reporting those conditions.   (*Id.* ¶¶ 132–41.)   Lastly, Plaintiff alleges that Otis Elevator violated Minnesota's Whistleblower Act by terminating him for making safety complaints.   (*Id.* 142–49.)

---

[4]   Plaintiff agrees that the OSHA claim should be dismissed as to Otis Elevator.   (Pl.'s Opp'n [Doc. No. 62] ("Pl.'s Otis Opp'n") at 1.)   Because OSHA does not provide for a private right of action, *see* 29 U.S.C. § 660(c)(2) ("If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in . . . district court against such person."); *Taylor v. Brighton Corp.*, 616 F.2d 256, 258 (6th Cir. 1980) ("[T]here is no implied private right of action under OSHA [§] 11(c)."); *George v. Aztec Rental Ctr. Inc.*, 763 F.2d 184, 186 (5th Cir. 1985) ("We therefore hold that there is no private cause of action under federal law for a private employer's retaliatory discharge of an employee contrary to section 11(c)."), the Court also dismisses Count IV as to the Union.

### 4.    The Union's Motion to Dismiss

The Union moves to dismiss the five counts alleged against it.  (*See generally* Def. Mem. [Doc. No. 45] ("Union's Mem.").)  The Union's primary argument is that Plaintiff was never a member of the Union and, thus, any count that alleges discrimination or retaliation based on exclusion from the Union fails as a matter of law.  (*Id.* at 2, 13–19.) Specifically, the Union asserts that the apprentice program is operated by a separate legal entity called the Joint Apprenticeship Committee ("JAC"), and that the Union cannot be held responsible for the JAC's actions.  (*Id.*)

Alternatively, the Union argues that Plaintiff has insufficiently plead Counts I and II because he has failed to plausibly allege that the Union breached its duty of fair representation under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  (*Id.* at 2, 19–25.)  In addition, the Union contends that Plaintiff's MHRA claim is preempted by section 301.  (*Id.* at 2, 25–28.)  Lastly, the Union asserts that Plaintiff has abandoned the Minnesota OSHA claim.  (Def.'s Reply [Doc. No. 61] ("Union Reply") at 3–4.)

### 5.    *Otis Elevator's Partial Motion to Dismiss*

Otis Elevator moves to dismiss Plaintiff's race-based harassment claims in Counts I–III, and Plaintiff's race-based failure-to-hire claim under Count II.  (Def.'s Reply [Doc. No. 64] ("Otis Reply") at 1–2.)[5]  The race-based harassment claims are based, in part, on

---

[5]    Otis Elevator withdrew its argument that Plaintiff's race-based hiring claims in Counts I–III are untimely.  (*See* Def.'s Mem. (Doc. No. 56] ("Otis Mem.") at 1–2, 5–11; Otis Reply at 1–2.)

the allegation that the first journeyworker repeatedly called plaintiff racially-charged names.  They are also based on two incidents cited in the Amended Complaint: 1) the meeting in Otis Elevator's North Dakota office when Plaintiff alleges that he was met with cold stares and the comment "he's black"; and 2) the orientation session when Plaintiff alleges that a new employee stated that "he liked to 'make nooses' " and use them.  (Am. Compl. ¶¶ 13–14, 33, 88, 91.)

Otis Elevator contends that those claims fail because (1) they did not create a hostile work environment, and (2) no evidence exists that they had anything to do with Plaintiff's race.  (Otis Mem. at 9–10.)  Likewise, it also contends that Plaintiff has failed to sufficiently plead the failure-to-hire claim under Section 1981 because the Amended Complaint contains no factual allegations that the hiring manager exhibited race-based animus nor even knew Plaintiff's skin color.  (*Id.* at 7–8.)[6]

## II.    DISCUSSION

### A.    Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff.  *Hager*, 735 F.3d at 1013.  However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations.  *Id.*  In addition, the Court ordinarily does not consider matters outside the pleadings on a motion

---

[6]    Otis Elevator also "requests a stay of the deadline to answer Plaintiff's Amended Complaint pending the disposition of this motion."  (Pl.'s Mot. Dismiss & Stay at 2.)

to dismiss.  *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (internal quotation marks and citation omitted).  The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."[7]  *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Because the existence of a statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) is proper only if the defense is apparent on the face of the complaint.

---

[7]     On this motion to dismiss, the Court considered the Amended Complaint and the EEOC charge documents, *see Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("We have previously held that an EEOC charge is a part of the public record and may be considered on a motion to dismiss.").

*See Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) ("Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. . . . [T]herefore the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." (citations omitted).) Thus, in considering the applicability of this defense the Court's review is limited to the Amended Complaint and any "public records and materials embraced by the complaint," *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008).

## B.   Analysis

### 1.   The Union's Threshold Arguments

The Union asserts that it is the wrong defendant.  Specifically, the Union contends that any of Plaintiff's claims that are premised on "alleged expulsion from the Union lack merit because Plaintiff was never a member of the Union."  (Union Mem. at 13.)  Instead, the Union alleges that the JAC "is responsible for administering the apprenticeship program" and has "comprehensive authority."  (*Id.* at 6.)  Because the JAC—not the Union—removed Plaintiff from the apprentice program, the Union asserts that Plaintiff has drawn the improper legal conclusion that he was expelled from the Union.  (*Id.* at 7–8.)

In deciding a motion to dismiss, the Court is required to limit its analysis to the allegations in the Amended Complaint, including any documents incorporated therein.  *See Illig*, 652 F.3d at 976.  Here, the Union submitted twenty exhibits in support of its motion to dismiss, asserting that all of them are incorporated by the Amended Complaint and that

they show, as a matter of law, that Plaintiff's claims must be dismissed. (*See* Griefenhagen Decl. Exs. 1–20.)

But on a motion to dismiss, the Court is not permitted to weigh the evidence; instead, it is *Plaintiff*'s version of events—not the version of events that appear in those documents—that must be taken as true. *See See El-Din v. New York City Admin. for Children's Servs.*, No. 12 Civ. 1133 (PAE), 2012 WL 3839344, at *3–5 (S.D.N.Y. Sept. 5, 2012) (denying motion to dismiss because Plaintiff's alleged facts must be taken as true, despite contrary evidence on EEOC charge document). Moreover, the Court must draw all inferences in favor of the Plaintiff. *Hager*, 735 F.3d at 1013; *see also El-Din*, 2012 WL 3839344, at *3.

Here, Plaintiff's Amended Complaint alleges that he "joined the International Union of Elevator Constructors, Local 9 . . . in January 2019 in their apprentice program." (Am. Compl. ¶ 1.) He further alleges that he "[w]as a member of the *Union* and part of an apprentice training program that was, at least in part, under the control of the *Union*." (*Id.* ¶ 86 (emphasis added).) He also alleges that on January 22, 2019, he "received a call from Elevator Union to see if he was available for a job for Otis," and that he "accepted the Union's offer." (Id. ¶¶ 11–12.) In the same way, he alleges that the Union offered him another job at Otis Elevator and required him to visit the Union's office to learn about it. (*Id.* ¶¶ 26–27.)

Plaintiff further alleges that he filed his grievances with the Union—not the JAC. For example, after Otis Elevator withdrew its offer in January 2019, he "reported this incident to Dan Gilbert at the Elevator Union." (*Id.* ¶ 17.) Also, after being placed at TKE,

Plaintiff reported the journeyworker's behavior to the Union, and alleges that the "Elevator Union" tried "to get someone at TKE to communicate with [Plaintiff] about the journey[worker]'s behavior." (*Id.* ¶ 21.) And Plaintiff alleges that when he "attempted to file a grievance with the Union, Dan Griefenhagen told [him] that if he did not go to work for Otis, he would get kicked out of the union" and that "as a pre-apprentice he had no rights."[8] (*Id.* ¶ 30.)

Additionally, while working at Otis Elevator, Plaintiff "reported [the first journeyworker's conduct] . . . to the Elevator Union." (*Id.* ¶ 38.) And it was "Dan Gilbert and Dave Griefenhagen from the Union" who arrived and Plaintiff "told them about the journey[worker]'s mistreatment, unsafe work practices, and constant verbal abuse." (*Id.* ¶¶ 47–48.) In response, Plaintiff alleges that "Gilbert and Griefenhagen told [him] essentially, that he had to 'take it or quit.'" (*Id.* ¶ 49.)

Lastly, Plaintiff alleges that the Union expelled him from its apprentice program. Specifically, Plaintiff alleges that "[o]n or about June 12, 2019, [Plaintiff] met with people from the Elevator Union to discuss whether he could stay a member of the union." (*Id.* ¶ 62.) Notably, in his opposition brief, Plaintiff confirms that his allegations relate to the Union, asserting that he "was a member" of the Union, received all his "guidance and

---

[8]    Griefenhagen filed a declaration in support of the Union's motion to dismiss, declaring as follows: "I am the Business Manager/Financial Secretary of Defendant International Union of Elevator Constructors, Local 9 . . . . I am the principal officer of Local 9, and I oversee the daily affairs and business operations of the Union." (Griefenhagen Decl. ¶ 1.) Notably, Griefenhagen does not declare that he is involved with the JAC.

direction" from the Union, paid Union dues, and was never told him to direct his concerns to the JAC.  ((Pl.'s Opp'n [Doc. No. 60] ("Pl.'s Union Opp'n") at 1–3, 1 n.1.)

Taking the above factual assertions as true, Plaintiff has alleged that he "joined" the Union in *its* apprentice program.  Not once does Plaintiff allege that he was a member of the JAC.  Moreover, even if he was, that does not end the analysis; rather, a factual question exists as to whether the Union operated through the JAC.  *See, e.g.*, *E.E.O.C. v. Loc. 638*, No. 71 Civ. 2877 (LAK), 2012 WL 3594245, at *10–13 (S.D.N.Y. Aug. 10, 2012) (denying motion to dismiss because it is "an evidentiary question" whether the union and the JAC "had an agency relationship, acted in concert, or were an integrated enterprise," and stating that "[w]hile the JAC is a separate legal entity, the union cannot, by means of a motion to dismiss, successfully claim it did not have any legal responsibility"); *see also E.E.O.C. v. Charleston Elec. Joint Apprenticeship Training Comm.*, 587 F. Supp. 528, 531 (S.D.W. Va. 1984) (denying summary judgment because, although distinct legal entities, plaintiff raised a genuine issue of material fact as to whether the JAC was an agent of the union).  Put differently, based on the allegations in the Amended Complaint, the Union cannot establish, as a matter of law, that it does not have any legal responsibility to the Plaintiff here.  Accordingly, the Union's membership argument fails.

The Union also contends that Counts I and II fail because Plaintiff has not plead a breach of section 301.  (Union Mem. at 19–25.)  To support its position, the Union points to Eighth Circuit precedent that, indeed, states that a plaintiff must allege a breach of section 301 when bringing claims based on unfair representation.  *See, e.g.*, *Martin v. Loc. 1513 & Dist. 118 of the Int'l Ass'n of Machinists & Aerospace Workers*, 859 F.2d 581,

583–84 (8th Cir. 1988) (involving a claim of unfair representation of women); *Carter v. United Food & Com. Workers, Loc. No. 789.*, 963 F.2d 1078, 1079 (8th Cir. 1992) (same).

In this case, unlike *Martin* and *Carter*, the Plaintiff does not allege an unfair representation claim.  To be sure, the Plaintiff asserts that the Union failed to act in response to his grievances on a few occasions.  But Plaintiff does not allege that failing to respond is the basis for his claims.  Rather, the Plaintiff alleges that the Union discriminated against him by (1) placing "his white, less-experienced colleagues in the job priority line ahead of him," and (2) expelling him "from its membership because of his race."  (*Id.* ¶¶ 87, 96, 105.)  These are not unfair representation arguments.

Moreover, sister circuits have rejected the Union's argument.  *See, e.g.*, *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 863 (9th Cir. 2016) ("[A] Title VII claim against a union does not include an extra-textual 'breach of the duty of fair representation' element."); *Green v. Am. Fed'n of Tchrs./Illinois Fed'n of Tchrs. Loc. 604*, 740 F.3d 1104, 1106 (7th Cir. 2014) ("If some duty external to Title VII is essential to a prima facie case, however, all of these decisions must be wrong.").  Accordingly, the Court is unpersuaded by the Union's argument under section 301, and, therefore, addresses each of Plaintiff's claims.

### 2.    Title VII Claims (Count I)

Under Title VII it is illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a).  It is also forbidden for a labor

organization to "exclude or expel from its membership, or otherwise to discriminate against," an individual based upon that individual's race.  42 U.S.C. § 2000e-2(c).

The Union seeks dismissal of Plaintiff's race-based discrimination, harassment, and retaliation claims under Title VII, while Otis Elevator seeks dismissal of Plaintiff's race-based harassment claim.  The Court considers each of those causes of action below.

### a.   Race-Based Discrimination

To establish a prima facie case of race-based discrimination under Title VII, a plaintiff must show that "he is a member of a protected group; he was qualified for his position; he suffered an adverse employment action; and the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011).

Here, Plaintiff alleges that the Union violated Title VII by engaging in race-based discrimination.  (Am. Compl. ¶¶ 77–87, 90, 94, 96–98.)  Specifically, Plaintiff alleges that he is a "black individual" who was qualified for the Union's apprentice program and that the Union discriminated against him (1) "right from the start when it placed his white, less-experienced colleagues in the job priority line ahead of him," and (2) when it expelled him "from its membership because of his race."  (*Id.* ¶¶ 7–9, 84, 87, 96.)  In accord with *Barber*, Plaintiff has plead sufficient facts to plausibly allege that he is a member of a protected class (i.e., black) who suffered an adverse action (i.e., terminated), despite being qualified, and that the circumstances give rise to an *inference* of discrimination (i.e., treated differently than white colleagues).

But the Union argues that any discrimination premised on the allegation that it placed "white, less-experienced colleagues" ahead of him in the priority line is time-barred or, alternatively, should be dismissed for failure to exhaust administrative remedies. (Union's Mem. at 29–32.)  The Court disagrees.

To bring a Title VII claim for discrimination, a plaintiff must first "file a timely charge with the EEOC or a state or local agency with authority to seek relief." *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012) (citing 42 U.S.C. § 2000e–5(e)(1)).  When a party files a charge with both the EEOC and a state or local agency, as is the case here, the plaintiff has 300 days from the date of the alleged unlawful conduct to file that charge.  *See* 42 U.S.C. § 2000e-5(e)(1).

Here, the Union correctly points out that the alleged discrimination must have occurred on or after March 9, 2019, to be timely.  (Union Mem. at 30.)  However, the Amended Complaint alleges that the Union placed white colleagues ahead of him on an ongoing basis.  (Am. Compl. ¶¶ 9, 87 (alleging that he "discovered later that his white colleagues, many of whom had no prior training or experience, were placed ahead of him on the job assignment list for the Union," and that "right from the start" the Union "placed his white, less-experienced colleagues in the job priority line ahead of him").  Nothing suggests, as the Union contends, that this discrimination only occurred on his first assignment.  Rather, Plaintiff alleges that the race discrimination has been ongoing *since* his first assignment.  Accordingly, the Union has not established a statute of limitations defense on the face of the Amended Complaint.  *See Jessie*, 516 F.3d at 713 n.2 (8th Cir.

18

2008) ("[T]he possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.").

This claim is also not barred for failure to exhaust administrative remedies. Plaintiff's EEOC charge specifically checks the box related to discrimination based on "race." (Griefenhagen Decl. Ex. 18 ("EEOC charge").) Moreover, Plaintiff's first sentence in the EEOC charge refers to the Union's role in referring him for job placements. (*Id.* at 2 ("I was initially referred for a job placement . . . .").) At this stage of the proceedings, Plaintiff sufficiently pleads an inference of discrimination. *See Barber*, 656 F.3d at 792 (explaining that the adverse action must occur "under circumstances giving rise to an inference of discrimination"). To be clear, Plaintiff need not allege direct evidence of race-based discrimination—pleading facts that raise an inference of discrimination is sufficient. *See Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (analyzing plaintiff's claim based on circumstantial evidence even though plaintiff lacked direct evidence); *Dickson v. McHugh*, No. 5:12CV00015 BSM, 2013 WL 11897798, at *2 (E.D. Ark. Dec. 4, 2013), *aff'd*, 590 F. App'x 652 (8th Cir. 2015) (confirming that plaintiff established a prima facie case of discrimination based on an inference of discrimination).

For these reasons, the Court denies the Union's motion to dismiss Plaintiff's race-based discrimination claim.

### b.   Race-Based Harassment

#### (i)   Otis Elevator

Otis Elevator seeks dismissal of the race-based harassment claim under Title VII because it alleges that Plaintiff has failed to adequately plead: (1) a racially hostile work

environment and (2) that Plaintiff's race motivated the alleged harassment. (Otis Mem. at 8–10.)

To establish a prima facie case of race-based harassment, the Plaintiff must show that (1) he is a member of a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment was based on race, and (4) the harassment affected a term, condition, or privilege of his employment. *See Anderson v. Fam. Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009). The work environment must be both objectively hostile to a reasonable person and subjectively hostile to the victim. *Id.*

Courts determine whether an environment is hostile "by looking at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Put differently, this is a fact-specific determination that is usually resolved at a later stage of litigation. *See Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005) (affirming summary judgment on hostile work environment claim); *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir. 2003) (affirming district court's grant of judgment as a matter of law on the same); *Ways v. City of Lincoln*, 871 F.2d 750, 753–54 (8th Cir. 1989) (reviewing district court's conclusion at the end of a bench trial that plaintiff suffered from a racially hostile work environment); *see also Schubel v. Lampland*, Civ. No. 13-1426 (PAM/JSM), 2013 WL 5787881, at *2 (D. Minn. Oct. 28, 2013) ("[T]he Court cannot weigh the evidence on a motion to dismiss.").

Here, Plaintiff alleges that Otis Elevator engaged in race-based harassment when an unidentified new hire "directed a comment to [Plaintiff] in front of the entire orientation group, saying that he liked to 'make nooses' and use them," and when he was forced to work with a journeyworker who called him " 'retarded, stupid, dumb, slow, and weak,' among other things." (Am. Compl. ¶¶ 33, 37.) Plaintiff further alleges that the journeyworker's abuse happened repeatedly, causing him to "break down in tears," and that it included a threat of physical violence. (*Id.* ¶¶ 43–44.) Plaintiff has plead facts sufficient to plausibly allege race-based harassment at this stage of the proceeding.

### (ii)   The Union

Plaintiff alleges a claim of hostile-work-environment harassment against the Union for (1) requiring him to work for Otis Elevator when it knew of his grievance that Otis Elevator did not hire him based on his race, and (2) forcing him to endure Otis Elevator's "hostile environment." (Am. Compl. ¶¶ 90, 94.)

To succeed on hostile-work-environment claim against the Union, Plaintiff must show: (1) that he belongs to a protected group; (2) that he was subject to unwelcome harassment; (3) a causal nexus between the harassment and his membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) the Union knew or should have known of the harassment and failed to take proper remedial action. *See Dowd v. United Steelworkers of Am., Loc. No. 286*, 253 F.3d 1093, 1101 (8th Cir. 2001) (affirming trial verdict that union was liable for picket line conduct— that created a hostile work environment—at employer's premises); *see also Slater v. Susquehanna Cnty.*, 613 F. Supp. 2d 653, 664 (M.D. Pa. 2009), *aff'd*, 465 F. App'x 132

(3d Cir. 2012) ("To hold a union liable, a plaintiff must show that: (1) she was subjected to a hostile work environment; (2) she requested action on the part of the union; and (3) the union ignored her request for action.").

Plaintiff has also plausibly plead a hostile work environment claim against the Union. The first four elements of the test cited above mirror the test applicable to Otis Elevator, and, as explained above, Plaintiff has plausibly plead a claim against Otis Elevator. Regarding the fifth element, Plaintiff alleges that he "attempted to file a grievance with the Union" about the Union's requiring him to work at Otis Elevator, but that "Dan Griefenhagen told [Plaintiff] that if he did not go work for Otis, he would get kicked out of the union." (Am. Compl. ¶ 30.) He further alleges that he expressed how "uncomfortable, afraid, and unsafe he felt working for Otis again, and yet the ultimatum remained." (*Id.* ¶ 31.) He also alleges that the Elevator Union never took any remedial action after he reported the discriminatory behavior. (*Id.* ¶¶ 38–39.) He further asserts that he "told [Dan Gilbert and Dave Griefenhagen] about the journey[worker]'s mistreatment, unsafe work practices, and constate verbal abuse," who told him "[t]hat he had to 'take it or quit.' " (*Id.* ¶¶ 47–49.) Moreover, he alleges that "[w]hen Dan Gilbert and Dave Griefenhagen from the Union told [him] that he had to endure the hostile environment, Defendant Union violated [his] rights under Title VII" and "[w]hen Defendant Union required Turner to go back to work for Otis (or face expulsion from the Union), despite his report of Otis' prior discrimination against him, Defendant Union violated [his] rights under Title VII." (*Id.* ¶¶ 90, 94.) Taken together, Plaintiff has plausibly plead that the Union knew of the harassment and failed to take remedial action.

For these reasons, the Court denies the Union's motion to dismiss Plaintiff's race-based harassment claim.

### c.     Retaliation Claims

For Plaintiff's retaliation claim to be actionable, he must show that (1) he engaged in protected activity, (2) the Union took an adverse action against him, and (3) the adverse action was linked to the protected activity. *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 831 (8th Cir. 2002); *Martin*, 859 F.2d at 585 (explaining that filing the EEOC charge was protected activity).

Here, Plaintiff alleges that he was expelled from the Union's apprentice program for reporting race discrimination on the jobsite.   (Am. Compl. ¶ 96 ("[T]he Union ultimately expelled [Plaintiff] from its membership because . . . of his prior complaints about race discrimination and harassment.").)   At this stage of the litigation, Plaintiff plausibly alleges sufficient facts to support such a claim to avoid dismissal. *See Brinkman v. Sprinkler Fitters Loc. #417*, Civ. No. 19-2981 (PAM/TNL), 2020 WL 3642314, at *5 (D. Minn. July 6, 2020) (denying motion to dismiss on retaliation claim when plaintiff alleged that she had "engaged in the protected activity of complaining to Sangren about discrimination she experienced at the Capitol project and suffered the adverse-employment action of termination three days later").   Accordingly, the Court denies the Union's motion to dismiss the Title VII retaliation claim.

### C.     Section 1981 Claims (Count II)

Plaintiff alleges that the Union violated Section 1981 "when it expelled [him] from its membership" because that decision "was based on [his] race."   (Am. Compl. ¶ 105.)   He

also alleges that Otis Elevator violated Section 1981 for failing to hire him "solely because it discovered that [he] was a black man." (*Id.* ¶ 102.)  Each allegation is considered in turn.

### 1.  The Union

A plaintiff may state a claim under Section 1981 for employment discrimination based on disparate treatment.  The Eighth Circuit applies "the same analysis to claims of discrimination and retaliation under Title VII and 42 U.S.C. § 1981." *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009); *see also Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013) (applying same standard to race-based retaliation claims). The plaintiff can establish an inference of discrimination by alleging that "similarly-situated employees, who are not black, were treated differently." *Wilson v. CFMOTO Powersports, Inc.*, Civ. No. 15-3192 (JRT/JJK), 2016 WL 912182, at *4 (D. Minn. Mar. 7, 2016) (internal quotation marks and citation omitted).

Here, like his Title VII claim, Plaintiff pleads facts sufficient to state a claim under Section 1981 for discrimination.  He first alleges that he is a member of a protected class and that he was qualified for placement.  (Am. Compl. ¶¶ 5–9, 84.)  He also alleges that the Union treated him differently than his white, less-experienced colleagues and that he was expelled based on his race.  (*Id.* ¶¶ 87, 105.)  At this stage of the litigation, Plaintiff has plausibly plead a Section 1981 claim for discrimination based on disparate treatment.

### 2.  Otis Elevator

Otis Elevator seeks dismissal of Plaintiff's Section 1981 claim alleging that he was not hired because of his race.  (Otis Mem. at 7–8.)  To establish a prima facie failure-to-hire claim, a plaintiff must show the following: "(1) he is a member of a protected group;

(2) he sought and qualified for opportunities that the employer was making available to others; (3) he, despite his qualifications, was denied the opportunities; and (4) after he was denied, the opportunities remained available or were given to other persons with plaintiff's qualifications." *Sheikh v. Indep. Sch. Dist. 535*, Civ. No. 00-1896 (DWF/SRN), 2001 WL 1636504, at *6 (D. Minn. Oct. 18, 2001); *see also Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 414 (7th Cir. 2018) (applying same standard).

Here, Plaintiff's failure-to-hire claim is insufficiently plead because he has not alleged any facts establishing that the opportunity was given to another person with the same qualifications but of a different race. *See Alja-Iz v. U.S. Virgin Islands Dep't of Educ.*, 626 F. App'x 44, 47 (3rd Cir. 2015) (affirming dismissal because plaintiff "did not plead any facts concerning whether the position . . . remained open or was filled in a manner giving rise to an inference of discrimination."). As such, Plaintiff's 1981 failure-to-hire claim fails.

### D.    The MHRA Claims (Count III)[9]

The Union contends that Plaintiff's MHRA claim is preempted by section 301 of the LMRA. (Union Mem. at 25–28.) In arguing preemption, the Union cites *Patterson v.*

---

[9]    Claims brought under the MHRA are subject to the same analysis as discrimination claims brought under Section 1981 and Title VII. *See Wilson*, 2016 WL 912182, at *7 ("Claims for employment discrimination and employment-related business discrimination under the MHRA are subject to the same general analysis as employment discrimination claims brought under § 1981."); *see also Smith v. DataCard Corp.*, 9 F. Supp. 2d 1067, 1078–79 (D. Minn. 1998) ("In essence, the elements of a section 1981 claim in the employment setting are the same as those of disparate-treatment, race-discrimination claims under Title VII and the MHRA."). Accordingly, for the reasons outlined above, the Court denies the Union's and Otis Elevator's motions to dismiss the MHRA claims.

*IATSE Loc. 13*, 754 F. Supp. 2d 1043 (D. Minn. 2010).  (Union Mem. at 26.)  Although *Patterson* recounts some generally applicable rules of law like "anti-discrimination law has long been a federal concern regulated by Congress," it does not establish preemption here. *See* 754 F. Supp. 2d at 1046.

The Eighth Circuit has explicitly rejected the Union's argument, explaining that it has "allowed state and federal discrimination claims to proceed against unions in federal court." *Markham v. Wertin*, 861 F.3d 748, 758–59 (8th Cir. 2017) (rejecting argument that the section 301 preempts MHRA discrimination claims); *Peltonen v. Branch No. 9*, Civ. No. 05-605 (DWF/JSM), 2006 WL 2827239, at *15 (D. Minn. Sept. 29, 2006) ("Section 301 does not preempt a state law claim unless the state-law claim itself is based on, or dependent on an analysis of, the relevant [Collection Bargaining Agreement]" (internal quotation marks omitted).).  Additionally, as explained above, this case does not involve an unfair representation claim.  Accordingly, the Union's preemption argument fails.

The Union also argues that the Plaintiff has abandoned the MHRA claim by failing to defend it in his opposition brief.  (Union Reply at 3–4.)  To show abandonment, the Union cites *Damien Const. Co. v. O'Fallon Fire Protection Dist.*, 812 F.3d 654 (8th Cir. 2016), and *Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583 (D. Minn. 2014).  (Union Reply at 2.)  But those cases are distinguishable.

In *Damien*, the Eighth Circuit held that plaintiff abandoned a claim by failing to argue it to the district court, which also meant that the court of appeals would not consider it on appeal.  812 F.3d at 657.  And, in *Zimmerschied*, the court found that the plaintiff had voluntarily dismissed certain claims because she explicitly conceded that "she may have

overreached on some of her claims" and then did not address them in her opposition brief. 49 F. Supp. 3d at 590–91. In contrast to those cases, Plaintiff continues to allege violations of the MHRA. (Pl.'s Union Opp'n at 1, 11.) To be sure, Plaintiff does not respond to every argument presented by the Union, but there is no indication that Plaintiff has abandoned Count III.[10]

### E. Minnesota OSHA Claim (Count V)

The Union contends that Plaintiff has abandoned the Minnesota OSHA claim. (Union Reply at 2, 4.) The Court agrees. As explained above, the District of Minnesota has held that a plaintiff voluntarily dismisses her claims when she concedes that "she may have overreached on some of her claims" and then fails to defend them in her opposition brief. *Zimmerschied*, 49 F. Supp. 3d at 590–91. Like in *Zimmerschied*, Plaintiff has voluntarily dismissed his Minnesota OSHA claim by not defending it in his opposition brief. For example, Plaintiff concludes his opposition as follows: "For the foregoing reasons, [Plaintiff] respectfully requests that this Court deny Defendant Local 9's Motion to Dismiss *counts I-III* of [Plaintiff]'s Amended Complaint." (Pl.'s Union Opp'n at 11 (emphasis added).) Such an explicit limitation, along with not addressing it in his opposition, establishes that Plaintiff abandoned this argument. Accordingly, the Court grants the Union's motion to dismiss Plaintiff's Minnesota OSHA claim.

---

[10]     The Union also argues that Plaintiff abandoned Count II for failing to oppose every argument raised in its memorandum. (Union Reply at 2–3.) For the same reasons outlined above, there is no indication that Plaintiff has abandoned Count II.

III.    **CONCLUSION**

Based on the submissions and the entire file and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  Defendant International Union of Elevator Constructors, Local 9's Motion
    to Dismiss [Doc. No. 43] is **DENIED** as to Counts I, II, and III, and is
    **GRANTED** as to Count IV and V; and

2.  Defendant Otis Elevator Company's Partial Motion to Dismiss [Doc.
    No. 54] is **DENIED** as to Count I, and is **GRANTED** as to the failure-to-
    hire claim in Count II; and

3.  Defendant Otis Elevator Company's Motion to Stay the Deadline for
    Answering the Amended Complaint [Doc. No. 54] is **GRANTED**.
    Defendants have until 14 days after this Order to answer the Amended
    Complaint.

Dated: January 28, 2022                          s/ Susan Richard Nelson
                                                 SUSAN RICHARD NELSON
                                                 United States District Judge