# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Derrick Devon Turner,<br><br>    Plaintiff,<br><br>v.<br><br>Otis Elevator Company; TK Elevator Corporation; and International Union of Elevator Constructors, Local 9,<br><br>    Defendants. | Case No. 21-CV-203 (SRN/ECW)<br><br><br>**ORDER ON MOTIONS TO RESCIND SETTLEMENT AGREEMENT** |

Derrick Devon Turner, 44 Bernard St. E., West St. Paul, MN 55118, Pro Se.

Chelsea Jayne Bodin, Joseph G. Schmitt, and David A. James, Nilan Johnson Lewis PA, 250 Marquette Ave. S., Ste. 800, Minneapolis, MN 55401; Jill Christine Taylor and Kyle A. Petersen, Seyfarth Shaw LLP, 233 S. Wacker Dr., Ste. 8000, Chicago, IL 60606, for Defendant Otis Elevator Company.

Frank Leo Kollman, Kollman & Saucier, P.A., 1823 York Rd., Timonium, MD 21093; Louise A. Behrendt, Meagher & Geer, PLLP, 33 S. 6th St., Ste. 4400, Minneapolis, MN 55402, for Defendant TK Elevator Corporation.

Brendan D. Cummins and Alex Montgomery Bollman, Cummins & Cummins, LLP, 929 2nd Ave. S., Ste. 1245, Minneapolis, MN 55402, for Defendant International Union of Elevator Constructors, Local 9.

SUSAN RICHARD NELSON, United States District Judge

   This matter is before the Court on the following motions filed by Plaintiff Derrick Devon Turner: (1) Amended Motion to Rescind Settlement Offer ("Amended Motion to Rescind") (Dkt. 118); (2) Motion for Leave to Amend Motion to Rescind Settlement Offer

("Motion for Leave to Amend") (Dkt. 138); (3) Amended Motion to Rescind Settlement Offer Due to Newly Discovered Evidence ("Second Amended Motion to Rescind") (Dkt. 139); and (4) his self-styled "Motion Request for Subpoena Du[]ce[s] Tecum, for the Original Documentation Used at Settlement Conference Labeled New Hire Registration Form to be Examined by Lisa Hanson Forensic Document Examiner. Enforced by Judges Order of the Court to be Examined" ("Motion for Subpoena Duces Tecum") (Dkt. 142).

Based on a review of the file, record and proceedings therein, and for the reasons set forth below, the Court grants Plaintiff's Motion for Leave to Amend (Dkt. 138), insofar as the Court has permitted and carefully considered Plaintiff's filings in connection with these motions. However, as explained below, the Court denies the rest of Plaintiff's motions, and enforces the settlement reached on December 2, 2022.

## I.   BACKGROUND

In December 2020, Plaintiff filed two employment discrimination lawsuits against Defendants, one in state court, and one in federal court. (*See* Dkt. 65 at 2.) After Defendants removed the state court lawsuit to this Court, the two actions were consolidated in June 2021. (Dkt. 35.) On July 6, 2021, Plaintiff, through his then-counsel Alicia Anderson, filed an Amended Complaint asserting claims of race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the Minnesota Human Rights Act; discrimination and retaliation claims under the Occupational Safety and Health Act and the Minnesota Occupational Safety and Health Act; and retaliation claims under the Minnesota Whistleblower Act against Defendants TK Elevator, Otis Elevator Company ("Otis"), and International Union of Elevator Constructors, Local 9 ("the Union"). (*See*

*generally* Dkt. 39.)  The Union moved to dismiss the Amended Complaint (Dkt. 44), Otis filed a partial motion to dismiss the Amended Complaint (Dkt. 54), and TK Elevator filed an answer (Dkt. 53).

On January 28, 2022, this Court issued an Order granting in part and denying in part the motions to dismiss.  (Dkt. 65.)  On March 4, 2022, Ms. Anderson moved to withdraw as Plaintiff's counsel (Dkt. 73), and the Court granted the motion on March 21, 2022 (Dkt. 76).  On June 2, 2022, Plaintiff filed a Second Amended Complaint (captioned as "Amended Complaint").  (Dkt. 87.)  On June 13, 2022, Defendants answered the Second Amended Complaint.  (Dkts. 88, 90, 92.)

Magistrate Judge Wright then issued a pretrial scheduling order setting May 31, 2023 as the deadline for the close of fact discovery.  (Dkts. 106, 108.)  On August 16, 2022, Magistrate Judge Wright referred Plaintiff to the Minnesota Chapter of the Federal Bar Association's Early Settlement Conference Project (Dkt. 109), and on August 31, 2022, attorney Kelley Jeanetta entered a limited appearance as Special Settlement Conference Counsel for Plaintiff.  (Dkt. 112.)  The Court then scheduled a settlement conference for December 2, 2022, to be held by Magistrate Judge Wright.  (Dkt. 113.)

### A.    Settlement Conference

At the December 2, 2022 settlement conference, Ms. Jeanetta represented Plaintiff, Jill Taylor represented Otis, Frank Kollman represented TK Elevator, and Brendan Cummins represented the Union.  (Dkt. 148 at 3:9-4:4.)[1]  Ultimately, all parties agreed to

---

[1]    Citations to transcripts are in page: line format.

the material terms of a settlement, which the magistrate judge summarized on the record. (*Id.* at 4:5-25.)  Magistrate Judge Wright then confirmed each party's understanding and agreement to the material terms.  (*Id.* at 5:1-12:5.)  Specifically as to Plaintiff, the magistrate judge engaged in the following colloquy:

> THE COURT: So let me check in with each of the parties.
>
> Mr. Turner, let me start with you, can you please go ahead and state your full name?
>
> MR. TURNER: My name is Derrick Devon Turner.
>
> THE COURT: Okay. And you're the plaintiff in this lawsuit, right?
>
> MR. TURNER: Yes, Your Honor.
>
> THE COURT: Okay. And did you hear me recite all of those material terms into the record?
>
> MR. TURNER: Yes, Your Honor.
>
> THE COURT: And do you understand them?
>
> MR. TURNER: Yes, Your Honor.
>
> THE COURT: And you are represented today for purposes of this settlement conference by Ms. Kelly Jeanetta. Mr. Turner, I want to make sure that you had the time to consult with Ms. Jeanetta and have her answer any questions you may have had; is that the case?
>
> MR. TURNER: No.
>
> THE COURT: You didn't --
>
> MR. TURNER: I did not have any more questions.
>
> THE COURT: Okay. Did you have sufficient time to consult with Ms. Jeanetta as well?
>
> MR. TURNER: Yes, Your Honor.

> THE COURT: Okay. And are you satisfied with her representation of you today?
>
> MR. TURNER: Yes, Your Honor.
>
> THE COURT: Okay. Thank you. And then, finally, Mr. Turner, are you agreeing to be bound by the material terms of the settlement that I recited?
>
> MR. TURNER: Yes.
>
> THE COURT: And is anyone forcing you into it?
>
> MR. TURNER: No.
>
> THE COURT: All right. Thank you, Mr. Turner.

(*Id.* at 5:13-6:21.)

### B.     Motions to Withdraw or Rescind Settlement Agreement

#### 1.     Initial Motion

Three days later, on December 5, 2022, Plaintiff filed his initial pro se "Motion to Withdraw[] Settlement Offer" [2] in which he sought to rescind the settlement on the grounds that Ms. Jeanetta purportedly told him that he had 21 days to rescind the agreement, but he later learned that there was no such rescission period. (Dkt. 116 at 2.)  Plaintiff stated that he wanted to discuss the settlement with his family before making a final decision, and that when he accepted the offer at the settlement conference, he "was not in the right head space" and believed there was a 21-day rescission period. (*Id.* at 2-4.)

---

[2]     Because Ms. Jeanetta's representation of Plaintiff was limited to the settlement conference, her representation was terminated following the settlement conference, and Plaintiff has proceeded to represent himself.

### 2.    Amended Motion to Rescind

In light of Plaintiff's motion, Magistrate Judge Wright scheduled a status conference for December 16, 2022. (Dkt. 117.) However, before the status conference, Plaintiff filed his pending Amended Motion to Rescind, arguing that rescission is warranted because he learned of newly discovered evidence of medical damages after the settlement conference. (Dkt. 118.) In addition, he asserts claims of professional misconduct against Ms. Jeanetta and Defendants' counsel. (*Id.*) For these reasons, Plaintiff asks the Court to "null and void" the settlement. (*See id.*)

At the December 16, 2022 status conference, Magistrate Judge Wright terminated Plaintiff's initial "Motion to Withdraw[] Settlement Offer," in light of his newly filed Amended Motion to Rescind. (Dkt. 119.) She also set a briefing deadline for Defendants to respond to Plaintiff's Amended Motion to Rescind. (*Id.*)

On January 9, 2023, Defendants filed their opposition briefs and supporting documents. (Dkts. 126-127, 132, 134, 134-1 to 134-5, 137.)

### 3.    Motion for Leave to Amend; Second Amended Motion to Rescind

On January 23, 2023, Plaintiff filed two more pending motions—his Motion for Leave to Amend, along with his Second Amended Motion to Rescind. (Dkts. 138, 139.) As noted earlier, the Court grants Plaintiff's Motion for Leave to Amend, in that it considers all of Plaintiff's arguments in his pending motions.

In his Second Amended Motion to Rescind, Plaintiff seeks to rescind the settlement agreement based on newly found evidence, noting that a handwriting expert, Lisa Hanson, has reviewed a copy of the New Hire Registration Form discussed during the settlement

conference.  (Dkt. 139 at 2–3.)  He asserts that Ms. Hanson has determined that Plaintiff "highly probabl[y] did not" make an "X" on the Form to indicate that he was a probationary apprentice, and that "Plaintiff's signature on the document may also be forged."  (*Id.*)  In addition, Plaintiff:  (1) repeats his prior allegations regarding Ms. Jeanetta; (2) adds a new allegation that she failed to inform him "that the documentation provided by the judge from the defendants was not a legally binding contract due to the fact it only had one signature, when two signatures are required for the document"; (3) alleges that during the settlement conference, Defendants gave false evidence to the Court, namely, the New Hire Registration Form; (4) asserts that Ms. Jeanetta did not give him "a conflict of interest full disclosure consent form to review and sign," and that he lacked the opportunity to fully assess an alleged conflict of interest between his attorney and the Union's law firm; and (5) seeks sanctions from all Defendants based on alleged violations of the Federal Rules of Civil Procedure and Minnesota Rules of Professional Conduct in connection with the "bad faith settlement."  (*Id.* at 3–19.)  As to relief, Plaintiff again asks the Court to "null and void the verbal settlement agreement."  (*Id.* at 4.)

In support of the motion, Plaintiff submits a copy of the New Hire Registration Form, a copy of a lab report prepared by Lisa Hanson dated January 20, 2023, and a "Letter Outlining the Importance of Examining Original Evidence" (Dkt. 140), along with a second document with the subject line "Original Evidence Is Critical for The Forensic Examinations of Questioned Documents And/or Comparisons Of Forensic Writing" (Dkt. 141).

### 4.     Motion for Subpoena Duces Tecum

In January and February 2023, Plaintiff filed his pending Motion for a Subpoena Duces Tecum, along with supporting documents.  (Dkts. 142, 143, 146.)  He seeks the original New Hire Registration Form used at the settlement conference so that Ms. Hanson can examine it.  (Dkts. 142, 143; *see also* Dkt. 145.)

On February 8, 2023, Magistrate Judge Wright issued an Order stating that briefing was now closed on the rescission-of-settlement motions, and the Court would decide them on the papers unless the Court determined that a hearing would be necessary.  (Dkt. 147.)  However, the magistrate judge noted that the Court would not consider any additional papers filed after February 8, 2023 in connection with these motions, and she also stayed this case pending the Court's ruling.  (*Id.*)

## II.    DISCUSSION

### A.     Motions for Rescission

### 1.     Enforceable Settlement Agreement

The Court first notes that because Plaintiff filed his initial Motion to Rescind prior to the dismissal of the lawsuit, which has not yet occurred, the Court maintains jurisdiction over this matter.  *Cf. Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (finding that enforcement of settlement agreement is not a continuation of a dismissed suit, and requires its own basis for jurisdiction); *see also 4:20 Commc'ns, Inc. v. Paradigm Co.*, 336 F.3d 775, 778 (8th Cir. 2003) (finding district court lacked jurisdiction to enforce settlement agreement where dismissal order did not incorporate terms of the settlement, and 90-day period of post-settlement jurisdiction to enforce agreement had expired).

Defendants assert, and Plaintiff does not dispute, that Minnesota law applies to this settlement agreement.  (*See* Dkt. 126 at 2; Dkt. 132 at 5-6.)  Indeed, the Eighth Circuit has applied Minnesota state law to settlement enforcement disputes arising in this District.  *See, e.g., W. Thrift & Loan Corp. v. Rucci*, 812 F.3d 722, 725 (8th Cir. 2016).

The "settlement of lawsuits is greatly favored and settlements will not be set aside lightly." *Unitarian Univ. Church of Minnetonka v. City of Wayzata*, 890 F. Supp. 2d 1119, 1124 (D. Minn. 2012) (citing *Schumann v. Northtown Ins. Agency, Inc.*, 452 N.W.2d 482, 483 (Minn. Ct. App. 1990)).  The Minnesota Supreme Court has held that a settlement is contractual in nature and is governed by rules of contract law.  *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971); *see also Rosenbloom v. Gen. Nutrition Ctr., Inc.*, No. CIV. 09-1582 DWF/SRN, 2010 WL 1050297, at *2 (D. Minn. Mar. 18, 2010) ("Under Minnesota law, it is well established that settlement agreements are governed by principles of contract law.") (footnote omitted).  As explained in *Rosenbloom*:

> A full and enforceable settlement requires offer and acceptance so as to constitute a meeting of minds on the essential terms of the agreement.  Intent to contract is based upon the objective manifestations of the parties and not upon subjective but unmanifested intent. Only those terms upon which the settlement hinges are to be considered material terms.

2010 WL 1050297, at *2 (citing *Ryan*, 193 N.W.3d at 297; *TNT Props., Ltd. v. Tri-Star Developers, LLC.*, 677 N.W.2d 94, 102 (Minn. Ct. App. 2004); *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1028 (D. Minn. 2003) (applying Minnesota law)) (original quotations omitted).

A settlement agreement need not be in writing to be enforceable.  *See W. Thrift & Loan Corp.*, 812 F.3d at 725 ("Therefore, the record itself was sufficient to create an enforceable settlement agreement, even though the parties did not memorialize the agreement.") (citing *Austin Farm Center, Inc. v. Austin Grain Co.*, 418 N.W.2d 181, 184 (Minn. Ct. App. 1988)).  An enforceable settlement simply "requires the parties to reach agreement on the essential terms of the deal." *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997) (citing *Ryan*, 193 N.W.2d at 297).  "The fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." *Id.* (citing *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985) (per curiam)).

Here, at the conclusion of the December 2, 2022 settlement conference, the Court memorialized the material terms of the settlement and each party agreed to those material terms on the record.  (*See generally* Dkt. 148.)  The Court summarized the material terms, confirmed the material terms with counsel, and confirmed that Plaintiff heard the material terms, understood them, had sufficient time to consult with Ms. Jeanetta, was satisfied with her representation, and was voluntarily "agreeing to be bound by the material terms of the settlement that [the Court] recited." (*Id.* at 1:3-11, 4:5-25, 5:1-12, 5:15-6:20.)  This record demonstrates the existence of a valid settlement agreement between Plaintiff and Defendants.  *See W. Thrift & Loan*, 812 F.3d at 725.

A party seeking to avoid a settlement bears the burden of showing sufficient grounds to vacate the settlement. *Johnson v. St. Paul Ins. Co.*, 305 N.W.2d 571, 573 (Minn. 1981). Mutual mistake of fact, fraud, concealment, or misrepresentation are types of conduct that

may support vacating a settlement. *See id*. at 573–75; *Graf v. Sholes*, No. C1-97-1893, 1998 WL 297519, at *1 (Minn. Ct. App. June 9, 1998).

As a general matter, Plaintiff argues that "his anxiety, depression and other medical conditions took over him and the confusion caused the plaintiff to enter into a state of fluster and being overwhelmed" at the settlement conference and he was mentally "in a haze and visibly displaying extreme[] anxiety and apparently confused." (Dkt. 139 at 15.) While the Court is sympathetic to Plaintiff's concerns, "only a party's objective, as opposed to subjective, intent is relevant." *Rosenbloom*, 2010 WL 1050297, at *3. "'An open court stipulation as to a settlement agreement is a contract but made with more solemnity and with better protection to the rights of the parties than an ordinary contract made out of court.'" *Id.* (citing *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 560 (8th Cir. 2008) (original quotations omitted) (applying Missouri law)). Here, as in *Rosenbloom*, Plaintiff expressly agreed, on the record, that he understood the material terms of the settlement agreement, voluntarily agreed to be bound by the settlement, and was satisfied with counsel's representation. (Dkt. 149 at 5:15-6:20.) In short, nothing in the record objectively shows that Plaintiff was reluctant or felt pressured to agree to the settlement. Rather, the record supports only one finding—that Plaintiff objectively intended to agree to the settlement and expressly manifested his agreement.

### 2.    Conduct of Plaintiff's Former Counsel

As noted earlier, Plaintiff also contends that fraud and misconduct allegedly perpetrated by Ms. Jeanetta supports the revocation of the settlement. In particular, Plaintiff alleges that Ms. Jeanetta told him he had 21 days to decide whether to accept or

decline the settlement,[3] that she was involved in transmitting defense counsel's alleged mischaracterization of the Court's January 28, 2022 Order, that she failed to advise Plaintiff that the New Hire Registration Form was not a binding contract, that she failed to provide a conflict of interest consent form to review and sign,[4] and that her conduct violated the Rules of Professional Conduct. (*See, e.g.*, Dkt. 118 at 1-4; Dkt. 139 at 3–6, 13–19.)

However, a party's misunderstanding about counsel's representations in the settlement context, or misunderstanding about what the party is agreeing to, is not a basis for setting aside a settlement, particularly where the party expressly agreed to the settlement. *See, e.g.*, *Kinzer v. CitiMortgage, Inc.*, No. A14-0830, 2015 WL 234262, at *3 (Minn. Ct. App. Jan. 20, 2015) ("No authority supports the notion that a party may void a settlement agreement by claiming that a party was misadvised about the consequences of refusing to sign by his or her own attorney. We therefore conclude that the district court properly held that Kinzer is not entitled to void the settlement agreement."); *Harris v.*

---

[3]    Plaintiff has not identified any specific statute that supports his claim of 21-day rescission rights. He did not bring any claims under the Age Discrimination in Employment Act, and the Minnesota Human Rights Act, Minnesota Statutes 363A.31, subd. 2, does not provide a right to rescission because Plaintiff filed his claims with a judicial body and the EEOC. (*See* Dkt. 1; Dkt. 39 ¶¶ 72-76.)

[4]    It appears that Ms. Jeanetta and Mr. Cummins, counsel for the Union, both formerly worked at the same law firm, prior to this litigation. (*See* Dkt. 139 at 5.) Plaintiff speculates that Ms. Jeanetta's "personal interest may have affected her ability to properly represent him in this matter," and that "her acceptance of false material evidence and her insisting on continuing the conference" despite Plaintiff's anxiety and attempts to end the conference "is due to a conflict of interest." (*Id.* at 5.) The Court rejects such speculation as a basis for vacating the settlement, nor does Plaintiff cite any authority in support of the proposition. It appears that Ms. Jeanetta disclosed the prior connection to Plaintiff, and there is no evidence that any "personal interest" existed at the time of the settlement conference, much less that it affected counsel's ability to effectively represent Plaintiff.

*Arkansas State Highway & Transp. Dep't*, 437 F.3d 749, 752 (8th Cir. 2006) ("The district court acknowledged in the order that '[o]ne can understand how a lay person might misunderstand what a lawyer says and writes about a settlement in a case like this.' However, even if Harris misunderstood what she was agreeing to, this would not defeat the grant of express authority to enter into the settlement agreement.").  Moreover, where a party moves to vacate a settlement agreement based on his counsel's authority to enter into it, courts have held that "arguments addressing the adequacy of [the lawyer's] legal representation, regardless of their merit, are irrelevant."  *Mueller v. Guardian Life Ins. Co.*, 143 F.3d 414, 416 (8th Cir. 1998); *see also Harris*, 437 F.3d at 752 (same); *Jones v. Int'l Paper Co.*, 187 F.3d 641 (8th Cir. June 8, 1999) ("Any arguments regarding the adequacy of Jones's legal representation are irrelevant to the district court's finding that Jones's attorney had authority to settle.").

Even if Plaintiff's allegations about Ms. Jeanetta's conduct were true, the remedy would not support vacating Plaintiff's settlement agreement with Defendants.  *See Kluver v. United States*, No. CIV. 3-93-89, 1993 WL 759655, at *2 (D. Minn. Oct. 22, 1993) ("A clear and long-established rule in the Eighth Circuit is that a party seeking to set aside a settlement agreement for fraud or malfeasance must show that *the other party to the agreement* committed fraud, malfeasance or misrepresentation.") (emphasis added).

Accordingly, the Court finds that these facts do not give rise to a fact dispute, nor do they provide a basis for setting aside the settlement agreement based on Ms. Jeanetta's alleged conduct.  As noted, Plaintiff expressly stated on the record that he heard and understood the material terms of the settlement, agreed to be bound by the material terms

(even though they did not include a rescission period), and expressed his satisfaction with counsel's representation.  He asked the magistrate judge no questions on the record.

Finally, to the extent that Plaintiff accuses Ms. Jeanetta of misconduct similar to his allegations against defense counsel, the Court's substantive discussion below of those allegations applies equally to Ms. Jeanetta.

### 3.      Conduct of Defense Counsel

Turning to Plaintiff's allegations concerning defense counsel, he contends that they engaged in the following fraudulent conduct:  (1) misrepresenting the effect of the Court's January 28, 2022 Order, thereby deceiving him at the settlement conference; (2) communicating their misrepresentations to Ms. Jeanetta by email during the settlement conference; and (3) attempting fraud on the Court because the New Hire Registration Form was "not legally binding" and because defense counsel allegedly altered that Form to include an "X" (signifying Plaintiff's purported agreement that he was a probationary apprentice) and forged his signature.  (Dkt. 118 at 1-4; Dkt. 139 at 1-3, 4-15.)  Defendants deny any such conduct, and as to the Form, they argue that any alleged tampering or forgery did not influence Plaintiff's decision to settle the case.  (Dkt. 126 at 2, 5; Dkt. 127 ¶ 3; Dkt. 132 at 5-11; Dkt. 134 ¶ 3; Dkt. 137 at 2-4.)

"A contract is voidable if a party's assent is induced by either a fraudulent or a material misrepresentation by the other party, and is an assertion on which the recipient is justified in relying."  *Carpenter v. Vreeman*, 409 N.W.2d 258, 260-61 (Minn. Ct. App. 1987).  "A misrepresentation is fraudulent if it is intended to induce a contract and either is known to be false or made without knowledge of whether it is true or false."  *Id.* at 261.

14

A misrepresentation is considered "material" if it "would be likely to induce a reasonable person to manifest his or her assent or the maker knows that for some special reason it is likely to induce the particular recipient to manifest such assent." *Id.* However, whether fraudulent or material, a misrepresentation has no legal effect unless the recipient accepts the contract in reliance on the misrepresentation. *Id.* Even then, reliance must be justified in order to void the contract. *Id.*

As to Defendants' attorneys' alleged mischaracterization of the January 28, 2022 Order, Plaintiff states, "Defendants told Plaintiff that the Honorable Susan Richard Nelson has ruled that all evidence the plaintiff had prior to the Date of March 9, 2019 had been barred as well as all the plaintiff['s] Section 1981 claims against the defendants." [5] (Dkt. 118 at 1.) He contends that he later discovered that this was a "misrepresentation of important information which deceived plaintiff at the settlement conference." (*Id.*)

Even assuming that defense counsel communicated this information to Plaintiff at the settlement conference, such information could not be considered a material or fraudulent misrepresentation. As the Court observed in the January 28, 2022 Order, because of the applicable 300-day limitations period under Title VII, the alleged

---

[5]   Plaintiff believes that the entire settlement conference was recorded—including the alleged conversations between Ms. Jeanetta and defense counsel, or between Plaintiff and Defendants—because it was held via Zoom. (*See, e.g.*, Dkt. 116 at 3 ("The conversation would be recorded on the Court['']s Zoom call as well"); Dkt. 118 at 2 ("These conversat[ions] would be captured on record being the conference was held over Zoom video and audio record.").) However, as is typical for in-person or video settlement conferences, the only portion of the December 2, 2022 settlement conference that was recorded was the memorialization of the material terms, which is documented in the transcript at Docket 148. Conversations that took place in the break-out rooms or at any other time were not recorded.

discrimination subject to Title VII must have occurred on or after March 9, 2019 to be timely. (Jan. 28, 2022 Order at 18.) While the Court declined to dismiss Plaintiff's claim because he had alleged *ongoing* discrimination, any Title VII allegations arising before March 9, 2019 would have been time-barred, (*id.* at 18–19), rendering evidence that predated March 9, 2019 irrelevant to supporting Plaintiff's Title VII claim. As to Plaintiff's § 1981 discrimination claim, the Court did, in fact, dismiss the claim against Otis Elevator, although it permitted Plaintiff's § 1981 claim against the Union to proceed. (*Id.* at 24–25.)

Also, by his own admission, Plaintiff speculates about whether any communications between Ms. Jeanetta and defense counsel occurred. He states that he is "not positive" they occurred, they "appeared to be" communicating, and Ms. Jeanetta spoke to him about "what seemed to be" communications from Defendants. (Dkt. 118 at 2.) By contrast, counsel for Defendant Otis Elevator attests that no such communications occurred during or after the settlement conference. (Dkt. 127 ¶ 3.) Plaintiff's rank speculation about any such communications does not sufficiently rise to the level of a factual dispute, nor does it warrant rescinding the settlement agreement.

Further, even if defense counsel did mischaracterize the January 28, 2022 Order, and the misrepresentations were material or fraudulent, and Plaintiff actually relied on the alleged misrepresentations, such reliance would not be justified under these facts. When the Court issued the January 28, 2022 Order, Plaintiff was represented by Ms. Anderson (*compare* Dkt. 65 (Jan. 28, 2022 Order), *with* Dkts. 72, 73 (Attorney Anderson's March 2022 motions to withdraw as counsel)), and during the settlement conference, he was represented by Ms. Jeanetta. (Dkt. 115.) There would be no plausible basis for Plaintiff to

16

rely on defense counsel's alleged misrepresentations about the January 28, 2022 Order when he was represented by his own counsel at the time the Court issued the Order and during the settlement conference.

The Court also concludes that defense counsel's alleged tampering with the New Hire Registration Form does not provide a basis for rescinding the settlement agreement. The Union points out that even during the settlement conference, Plaintiff argued that the New Hire Registration Form had purportedly been tampered with or altered, claiming that he did not make the "X" on the Form. (Dkt. 134 ¶ 3.) Yet despite Plaintiff's concerns, he nevertheless then agreed, on the record, to the material terms of the settlement. (*Id*.) Given the sequence of events, it is not plausible that he relied on the Form or was somehow misled as to its importance when agreeing to the material terms of the settlement. Similarly, the question of whether the Form was a "binding contract" is irrelevant. Plaintiff, who already harbored doubts about the legality of the Form, albeit based on allegations of forgery, nevertheless entered into the settlement agreement. Furthermore, nothing demonstrates that defense counsel made an assertion about the Form being a "binding contract" during the settlement conference.

Accordingly, the Court finds that these facts do not give rise to a fact dispute, nor do they show that defense counsel made fraudulent or material misrepresentations to induce Plaintiff to accept the settlement agreement, on which Plaintiff justifiably relied. Accordingly, recission of the settlement agreement is not warranted on this basis.

### 4.     New Evidence

Finally, Plaintiff's allegations about new evidence do not provide a basis for vacating the settlement.  "[P]arties to a voluntary settlement agreement cannot avoid the agreement simply because the agreement ultimately proves to be disadvantageous." *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985) (noting that "'[i]f a party to a Title VII suit who has previously authorized a settlement changes his mind . . . , that party remains bound by the terms of the agreement.'") (quoting *Fulgence v. J. Ray McDermott & Co*., 662 F.2d 1207, 1209 (5th Cir. 1981)).

For all of these reasons, the Court denies Plaintiff's Amended Motion to Rescind (Dkt. 118) and Plaintiff's Second Amended Motion to Rescind (Dkt. 139), and grants Defendants' requests that the Court enforce the settlement reached on December 2, 2022.[6] As to Plaintiff's Motion for Leave to Amend (Dkt. 138), again, the Court grants the motion insofar as the Court has considered every document filed by Plaintiff in connection with these motions.

---

[6]     Defendant TK Elevator seeks an award of fees and costs incurred in opposing Plaintiff's attempt to rescind the settlement on the grounds that it was not brought in good faith and also asks the Court to "identify how much of the settlement amount is back pay and how much is compensable damages not subject to withholding."  (Dkt. 137 at 6.) While the Court denies Plaintiff's rescission-related motions, the Court finds he did not bring them in bad faith.

As to the request that the Court allocate the settlement between back pay and compensable damages not subject to withholding, the Court is not in a position to make such an allocation. Because the parties failed to agree to an allocation, the Court directs Defendants to treat the full settlement amount as payment for compensatory damages, not subject to withholding.

**B.** **Motion for Subpoena Duces Tecum**

As noted earlier, Plaintiffs moves for a subpoena duces tecum in order to obtain the original New Hire Registration Form for expert examination.

As discussed above, Plaintiff questioned the authenticity of the New Hire Registration Form during the settlement conference. However, despite any doubts he may have entertained regarding the Form, Plaintiff nevertheless agreed to the material terms of the settlement. Accordingly, there is no need to develop the record with respect to the Form, including analysis of the original, because it is not relevant to the question of rescission. The Court therefore denies Plaintiff's Motion for a Subpoena Duces Tecum (Dkt. 142).

**C.** **Evidentiary Hearing**

"A district court has the inherent power to summarily enforce a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Gatz v. Sw. Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988). However, "[t]he district court must hold an evidentiary hearing . . . when there is a substantial factual dispute concerning the existence or terms of the settlement agreement, or when the situation presents complex factual issues." *Id*. (citations omitted). Here, the terms of the agreement, as memorialized on the record at the conclusion of the December 2, 2022 settlement conference, are clear and unambiguous. Further, there is not a substantial factual dispute over the existence or the terms of the agreement, and Plaintiff himself agreed to the material terms on the record. As explained above, no factual development is

necessary to conclude that Plaintiff's allegations of fraud or misrepresentation by his former counsel or Defendants' counsel do not warrant rescission.

For these reasons, the Court denies an evidentiary hearing.

## III. CONCLUSION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED that**:

1.     Plaintiff's Amended Motion to Rescind Settlement Offer (Dkt. 118) is **DENIED**;

2.     Plaintiff's Motion for Leave to Amend Motion to Rescind Settlement Offer (Dkt. 138) is **GRANTED** only insofar as the Court has considered all of Plaintiff's filings in connection with these rescission-related motions;

3.     Plaintiff's Amended Motion to Rescind Settlement Offer Due to Newly Discovered Evidence (Dkt. 139) is **DENIED**;

4.     Plaintiff's "Motion Request for Subpoena Du[]ce[s] Tecum, for the Original Documentation Used at Settlement Conference Labeled New Hire Registration Form to be Examined by Lisa Hanson Forensic Document Examiner. Enforced by Judges Order of the Court to be Examined" (Dkt. 142) is **DENIED**;

5.     The Court **ENFORCES** the December 2, 2022 settlement, as memorialized on the record;

6.     Within **14 days**, Defendants shall satisfy the full settlement amount as payment for compensatory damages, not subject to withholding; and

7.      The Court reserves jurisdiction over this matter for **30 days**, after which time it will enter final judgment.


Dated: March 9, 2023                          s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge